## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ADAJA ROLLE,**

   **Plaintiff,**

**v.**                                    **CASE NO:**

**SAINT LEO UNIVERSITY INC.,**

   **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ADAJA ROLLE, (hereinafter "Plaintiff" or "Ms. Rolle"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, SAINT LEO UNIVERSITY INC. (hereinafter "Defendant" or "Saint Leo University") and alleges:

### INTRODUCTION

1.     The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race, color, and national origin, as well as retaliation in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; and 42 U.S. Code § 1981 - Equal rights under the law.

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race, color, and national origin, and retaliated against her in violation of her rights under Title VII and 42 U.S. Code § 1981.

3.    As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6.    This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pasco County, Florida.

## PARTIES

8.     Plaintiff is a 22-year-old African American female who was raised in the Bahamas.

9.     Plaintiff is a member of a class protected against discrimination and retaliation based on her race, color, and national origin under Title VII and 42 U.S. Code § 1981 - Equal rights under the law.

10.    During the period from August 25, 2025, until September 30, 2025, Defendant employed Plaintiff as an Undergraduate Admissions Recruiter/Travel Recruiter/Enrollment Counselor.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state

statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII and 42 U.S. Code § 1981 - Equal rights under the law.

13.    The Defendant, SAINT LEO UNIVERSITY INC., is a Florida corporation with a principal place of business located at 33701 SR 52, San Antonio, FL 33574, and a mailing address at Post Office Box 6665, Saint Leo, FL 33574-6665.

14.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pasco County, Florida and the State of Florida.

15.    At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII and 42 U.S. Code § 1981 - Equal rights under the law.

16.    Accordingly, Defendant is liable under Title VII and 42 U.S. Code § 1981 - Equal rights under the law for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On December 8, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race, color, national origin discrimination, and retaliation.

19.    On December 11, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2026-00902) against Defendant.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.    Plaintiff is a 22-year-old African American female who was born on April 13, 2003. Plaintiff was born in the United States and raised in the Bahamas.

22.    Plaintiff is an alumna of Saint Leo University, having earned her Bachelor's degree in Business Management between January 2021 and 2025.

During her studies, Plaintiff also attended Georgia State University from August 2022 through April 2023.

23.    On August 25, 2025, Saint Leo University ("Defendant") hired Plaintiff as an Undergraduate Admissions Recruiter / Travel Recruiter / Enrollment Counselor at an annual salary of $44,000.

24.    Plaintiff's job duties included traveling to various locations within and outside the State of Florida to promote Saint Leo University to prospective students at recruitment fairs, high schools, and related recruitment events. Although Plaintiff was primarily assigned out-of-state recruitment responsibilities, she was also assigned in-state recruitment events by her supervisor, Neal Richardson.

25.    At the time of Plaintiff's hiring, Defendant employed four total domestic travel recruiters. Plaintiff was the only African American recruiter on the domestic travel recruiting team.

26.    The other domestic travel recruiters hired around the same time as Plaintiff included Emilee Falk (White), Yenderly (Dominican/Hispanic), Jade Waters (Asian), and Ashlee (Middle Eastern). Defendant also employed an international recruiter, Mia Lachelle, who is Bahamian and was raised in the Bahamas, like Plaintiff. Ms. Lachelle worked exclusively on the

international recruitment side and did not travel with the domestic recruitment team.

27.    From August 25, 2025, through September 17, 2025, Plaintiff reported directly to James "Neal" Richardson, who held the position of Interim Assistant Vice President for Enrollment.

28.    During the transition period from September 17 through September 22, 2025, Plaintiff worked under the interim supervision of Erin Zdrojewski, Associate Director of Internal Relations Campus Admissions, a White female.

29.    On September 22, 2025, Hannah Watters, a White female, became Plaintiff's supervisor when she assumed the role of Interim Assistant Vice President of Enrollment.

30.    On September 5, 2025, Erin Zdrojewski presented Plaintiff with Defendant's travel reimbursement and travel policy, which by its terms remained effective through September 29, 2025.

31.    On September 12, 2025, Mr. Richardson emailed Plaintiff and the other travel recruiters a full travel schedule. In addition to that schedule, Mr. Richardson separately instructed Plaintiff to prepare for and attend a last-minute recruitment fair at Indian River / Vero Beach High School on

September 23, 2025, from 5:00 p.m. to 7:00 p.m. Defendant possesses the email confirming this assignment.

32.    The Indian River / Vero Beach assignment required Plaintiff to travel approximately 108 miles, which amounted to roughly a two-hour drive from her location.

33.    Prior to the Vero Beach assignment, Plaintiff had previously expressed—both verbally and by email—to Mr. Richardson her concern and discomfort with driving long distances on highways at night, particularly after events ending at 7:00 p.m. Mr. Richardson was also aware that Plaintiff did not have her own personal vehicle at the time, although possession of a personal vehicle was never listed as a requirement in Plaintiff's job description.

34.    Based on these safety concerns, Mr. Richardson expressly approved Plaintiff's request to book a hotel for the night following the Vero Beach event rather than requiring her to drive back late at night.

35.    On September 19, 2025, Erin Zdrojewski sent Plaintiff a message via Microsoft Teams in a group chat that included other recruiters, stating that Plaintiff should not have booked a hotel and should have planned to drive back after the event.

36.    Later that same day, during an in-person interaction at approximately 5:00 p.m., Ms. Zdrojewski verbally told Plaintiff—within earshot of other employees—that she "should not be a travel recruiter" and should "look for another role within the Admissions Department."

37.    Plaintiff responded both in the group chat and verbally, explaining that the hotel was booked for safety reasons, that Mr. Richardson had approved the accommodation, and that while she could cancel the reservation, she could not guarantee the University would receive a refund because recruiters had been instructed to prioritize the lowest-cost hotel rates, which often do not allow cancellations or refunds.

38.    Plaintiff later confronted Ms. Zdrojewski regarding being singled out and criticized in front of other recruiters and staff.

39.    During this confrontation, Ms. Zdrojewski again told Plaintiff that she should look for another position in admissions and reiterated that she was not suited for her role as a travel recruiter. Plaintiff responded that she was fully capable of performing her duties.

40.    By contrast, Emilee Falk, a White travel recruiter, had previously been permitted to cancel and rebook a hotel in New York when she felt unsafe. That decision was approved by both Mr. Richardson and Ms.

Zdrojewski without any reprimand, scrutiny, or reference to budget constraints or policy violations.

41.    Other non-African American travel recruiters were also permitted to book travel arrangements, hotels, and rental cars without facing criticism, discipline, or being told they were unsuitable for their positions.

42.    Following the September 19, 2025 incident, Plaintiff was subjected to heightened scrutiny and more restrictive treatment than her non-African American colleagues.

43.    On September 22, 2025, when Hannah Watters assumed supervisory authority, she cancelled all of Plaintiff's scheduled recruitment assignments, including the Indian River / Vero Beach High School assignment, the Mercy High School Baltimore assignment, and the IMG Academy assignment, without explanation.

44.    On September 23, 2025, Ms. Watters instructed Plaintiff to cancel all remaining recruitment fairs, cancel her hotel reservations, and return her rental car.

45.    Also on September 23, 2025, Defendant implemented a new travel policy with revised guidelines, despite the prior policy remaining in effect through September 29, 2025.

46.    On September 24, 2025, Plaintiff returned her rental car at approximately 8:00 a.m., prior to the start of her workday, in compliance with Defendant's instructions.

47.    On September 29, 2025, Defendant conducted a meeting with recruitment staff to discuss the newly implemented travel policy.

48.    On September 30, 2025, at approximately 1:30 p.m., John Furr, Defendant's Human Resources Director, terminated Plaintiff's employment during her 90-day probationary period.

49.    Defendant claimed Plaintiff was terminated for alleged violations of travel policy, including purported inefficient use of resources, failure to timely return a rental car, extended use of a rental vehicle when no recruitment was scheduled, and failure to report to work after scheduled college fairs.

50.    Defendant further alleged that Plaintiff booked events in other recruiters' territories, attended unauthorized events, booked expensive hotels, and committed data entry errors.

51.    However, Hannah Watters had previously acknowledged that "there haven't been clear policies communicated around car rental," demonstrating the lack of clear and consistent guidelines during Plaintiff's

employment.

52.     Moreover, the alleged violations occurred prior to the adoption of the new travel policy on September 23, 2025. The policy in effect through September 29, 2025 did not include specific rental car usage requirements or mandatory return timelines.

53.     All travel recruiters, including Plaintiff, received minimal training regarding travel policies and procedures.

54.     Mr. Richardson expressly approved Plaintiff's use of a rental car to encompass her assigned recruitment schedule for the week and never instructed her that rental cars had to be returned during one- or two-day gaps between assignments. Allowing rental cars to cover multiple assignments was a standard and accepted practice.

55.     On October 2, 2025—just two days after Plaintiff's termination—Mr. Richardson authored a letter of recommendation describing Plaintiff as "an outstanding employee."

56.     In the letter, Mr. Richardson stated that Plaintiff was "thorough, intelligent, and has the ability to learn quickly," and praised her professionalism, adaptability, and strong work ethic.

57.     Mr. Richardson further stated that he "would not hesitate to

recommend her for any opportunity she pursues."

58.    The timing and substance of this recommendation directly contradict Defendant's stated reasons for termination and demonstrate that Plaintiff's job performance was not deficient.

59.    Plaintiff's differential treatment began immediately after she, as the only African American domestic travel recruiter, was publicly and privately criticized and told—verbally and in front of others—that she was unsuitable for her position on September 19, 2025.

60.    From September 19, 2025 through her termination on September 30, 2025, Plaintiff was subjected to heightened scrutiny, stricter standards, and adverse treatment that were not imposed on her non-African American colleagues who engaged in similar conduct without consequence.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Race Discrimination

61.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.    Plaintiff is a 22-year-old African American female.

63.    At all times material herein, Defendant employed Plaintiff and

Defendant was an "employer" within the meaning of Title VII.

64.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

65.    Plaintiff was subjected to discrimination by Erin Zdrojewski, who on September 19, 2025, publicly criticized Plaintiff in a Microsoft Teams group chat, telling her that she "should not be a travel recruiter and should find role within Admissions Department."

66.    Ms. Zdrojewski's discriminatory treatment of Plaintiff was based on Plaintiff's race, as demonstrated by the differential treatment between Plaintiff, the only African American travel recruiter, and her White colleague Emilee Falk, who had been permitted to cancel and rebook hotel accommodations when she felt unsafe without any criticism or suggestions that she was unsuitable for her position.

67.  Following the September 19, 2025 incident, Plaintiff was subjected to heightened scrutiny and different treatment compared to her non-African American colleagues, including the immediate cancellation of her travel assignments and eventual termination.

68.  Defendant knew or should have known of the discrimination suffered by Plaintiff, as the discriminatory statements were made by a supervisor in a group chat with other employees present.

69.  Defendant violated Title VII by subjecting Plaintiff to discrimination because of her race by failing to promptly correct the discriminatory behavior of Ms. Zdrojewski and by ultimately terminating Plaintiff's employment based on pretextual reasons.

70.  The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

71.  Defendant's actions constitute discrimination in violation of Title VII.

72.  As a direct, proximate and foreseeable result of Defendant's

aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ADAJA ROLLE, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SAINT LEO UNIVERSITY INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.  Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her race;

B.  Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay

with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
## National Origin Discrimination

73.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

74.    Plaintiff is a 22-year-old African American female who was raised in the Bahamas.

75.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

76.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

77.    Plaintiff was subjected to discrimination based on her national origin, having been raised in the Bahamas, which contributed to the

differential treatment she received compared to her colleagues who were born and raised in the United States.

78.     The discriminatory treatment Plaintiff experienced, including being told she was unsuitable for her position as a travel recruiter and being subjected to heightened scrutiny regarding travel policies, was motivated in part by her national origin.

79.     Defendant knew or should have known of the discrimination suffered by Plaintiff based on her national origin.

80.     Defendant violated Title VII by subjecting Plaintiff to discrimination because of her national origin by failing to promptly correct the discriminatory behavior and by ultimately terminating Plaintiff's employment based on pretextual reasons.

81.     The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

82.     Defendant's actions constitute discrimination in violation of Title VII.

83.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

WHEREFORE, the Plaintiff, ADAJA ROLLE, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SAINT LEO UNIVERSITY INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her national origin;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but

not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.  Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.  Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.  Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.  Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.  Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

84.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

85.    Plaintiff is a 22-year-old African American female who was raised in the Bahamas.

86.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

87.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

88.    Plaintiff engaged in protected activity under Title VII when she confronted Erin Zdrojewski on September 19, 2025, about being singled out

and criticized in the group Teams chat regarding her hotel booking, which she reasonably believed constituted discriminatory treatment based on her race and national origin.

89. Plaintiff's complaint to Ms. Zdrojewski about the differential treatment she was receiving compared to her White colleagues constituted protected activity under Title VII's anti-retaliation provisions.

90. Following Plaintiff's protected activity on September 19, 2025, Defendant took a series of adverse employment actions against her, including: (a) cancelling her upcoming travel assignments; (b) subjecting her to heightened scrutiny and different travel policy enforcement; (c) removing her from scheduled recruitment events; and (d) ultimately terminating her employment on September 30, 2025.

91. There was a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her, as evidenced by the temporal proximity between her complaint on September 19, 2025, and the subsequent adverse actions culminating in her termination on September 30, 2025.

92. The reasons provided by Defendant for Plaintiff's termination were pretextual, as demonstrated by the positive recommendation letter

written by Neal Richardson just two days after her termination, describing her as "an outstanding employee" with "professionalism, adaptability, and a strong work ethic."

93.    Defendant's stated reasons for termination were also pretextual given that the alleged policy violations occurred under policies that were admittedly unclear, and similar conduct by non-protected employees was not subject to disciplinary action.

94.    Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity by terminating her employment and taking other adverse employment actions.

95.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, in retaliating against Plaintiff for engaging in protected activity, deprived her of statutory rights under Title VII.

96.    Defendant's actions constitute retaliation in violation of Title VII.

97.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic

damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ADAJA ROLLE, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SAINT LEO UNIVERSITY INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for engaging in protected activity;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATION OF 42 U.S. CODE § 1981 FOR DISCRIMINATION ON THE BASIS OF RACE

98.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

99.    42 U.S. Code § 1981 - Equal rights under the law - makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race.

100.    Plaintiff is a 22-year-old African American female and a member of a protected class protected by 42 U.S. Code § 1981 from discrimination based on her race.

101.    At all times material herein, Defendant was and is an "employer" within the meaning of 42 U.S. Code § 1981.

102.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's race.

103.    As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and

other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

104.   Defendant violated 42 U.S. Code § 1981 by subjecting Plaintiff to discrimination because of her race by failing to promptly correct Ms. Zdrojewski's discriminatory behavior once it learned of it and by terminating Plaintiff's employment based on pretextual reasons motivated by racial animus.

105.   Plaintiff, by being subjected to this discrimination by Defendant, was unreasonably and negatively affected in the terms, conditions, and privileges of her employment with Defendant.

106.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the disparate treatment and discrimination of Plaintiff deprived her of statutory rights under 42 U.S. Code § 1981.

107.   Plaintiff can establish that she suffered damages because of unlawful discrimination in violation of 42 U.S. Code § 1981.

108.   Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to race.

109. Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of 42 U.S. Code § 1981.

110. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under 42 U.S. Code § 1981, according to proof.

111. Defendant's unlawful discriminatory actions constitute reckless, malicious, willful, and wanton violations of 42 U.S. Code § 1981 for which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, the Plaintiff, ADAJA ROLLE, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SAINT LEO UNIVERSITY INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated 42 U.S. Code § 1981 - Equal rights under the law, discriminating against Plaintiff based on her race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to 42 U.S. Code § 1981;

D.    Award Plaintiff all other damages available under 42 U.S. Code § 1981, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under 42 U.S. Code § 1981, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

G.    Award Plaintiff her attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

H.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 11th day of January 2026.

*/s/ Jason W. Imler, Esq*

Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
